IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 4, 2020

## MARVIN T. DICKERSON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
No. 12-05649      Paula L. Skahan, Judge
_____

### No. W2019-00840-CCA-R3-PC
_____

The Petitioner, Marvin T. Dickerson, appeals the denial of his petition for post-conviction relief, arguing that he received ineffective assistance of counsel in various matters related to his sentencing.  After review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J. and CAMILLE R. MCMULLEN, J., joined.

Joshua N. Corman, Memphis, Tennessee, for the appellant, Marvin T. Dickerson.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Assistant Attorney General; Amy P. Weirich, District Attorney General; and Leslie Byrd, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

The Petitioner and a co-defendant where indicted and convicted of especially aggravated robbery, attempted second-degree murder, two counts of attempted aggravated robbery, aggravated assault, and employment of a firearm during the commission of a dangerous felony.  This court affirmed the judgments with regard to the Petitioner on direct appeal.  State v. Antonio Henderson and Marvin Dickerson, No. W2015-00151-CCA-R3-CD, 2016 WL 3390627, at *1 (Tenn. Crim. App. June 10, 2016), perm. app. granted (Tenn. Oct. 24, 2016).  The Tennessee Supreme Court denied the Petitioner's application for permission to appeal but granted his co-defendant's application.

The Petitioner filed a timely petition for post-conviction relief as well as an amended petition through appointed counsel. The Petitioner alleged, relevant to this appeal, that he received ineffective assistance of counsel in various matters with regard to his sentencing.

The post-conviction court conducted an evidentiary hearing, at which trial counsel testified that he represented the Petitioner at trial and was also responsible for filing the motion for new trial. He recalled that no evidence was presented by the State at the Petitioner's sentencing hearing, only arguments were made, and that he did not receive any kind of notice regarding the Petitioner's juvenile history prior to the sentencing hearing. Trial counsel could not provide any reason that he did not object to the State's argument about the Petitioner's juvenile history or prior criminal convictions. He remembered the prosecutor "making comments as to [the Petitioner's having] a long-term criminal history," and he conceded that, to his knowledge, "someone's juvenile history is not something that is an appropriate enhancement factor for the . . . prior convictions as an enhancement factor[.]"

Appellate counsel testified that she represented the Petitioner on his direct appeal. Appellate counsel recalled that the only enhancement factor the trial court applied in determining the Petitioner's sentence was for prior criminal behavior. She acknowledged that she did not raise as an issue on appeal that it was improper for the trial court to consider the Petitioner's juvenile record as prior convictions. She explained that she did not raise that issue because she "didn't feel like it was a viable issue on appeal . . . [b]ased on [her] research in . . . case law." She said that her understanding of the law was that "[a] prior juvenile record can be used as an enhancement factor, still within the range." Asked about State v. Jackson, 60 S.W.3d 738 (Tenn. 2001), appellate counsel stated that she was familiar with the case and "I don't know why . . . [but] I did not feel that it was on point with this case. But I didn't feel that there is anything that had gone on in the sentencing hearing, that raised a legal issue." Likewise, appellate counsel did not think that the trial court's failure to merge the attempted second-degree murder and especially aggravated robbery convictions was a viable issue to raise on appeal.

## ANALYSIS

The Petitioner argues that he received ineffective assistance of counsel in various matters related to his sentencing. He asserts that trial counsel failed to object to the use of his juvenile criminal history as a consideration at sentencing or raise as an issue in the motion for new trial that the State failed to prove that he had a history of criminal convictions or behavior. He also asserts that trial counsel failed to raise as an issue in the motion for new trial that the trial court erred in failing to merge his convictions for especially aggravated robbery and attempted second-degree murder in violation of the

- 2 -

principles of double jeopardy and due process. He further argues that appellate counsel rendered ineffective assistance for failing to raise these issues on appeal.

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. The petitioner bears the burden of proving factual allegations by clear and convincing evidence. Id. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006). When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the post-conviction court's findings as to the credibility of witnesses or the weight of their testimony. Id. However, review of a post-conviction court's application of the law to the facts of the case is de novo, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed de novo, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996)

(citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). Moreover, the reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

Courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim.").

**Juvenile History**

The Petitioner first argues that trial counsel was ineffective for failing to object to the trial court's consideration of his juvenile criminal history as an enhancement factor at sentencing or raise as an issue in his motion for new trial that the State failed to prove by a preponderance of the evidence that he had a history of criminal convictions or behavior. He also argues that appellate counsel was ineffective for failing to raise this issue on appeal.

Relying on Jackson, 60 S.W.3d 738, the Petitioner asserts that "[a] defendant's juvenile record cannot be used to prove a previous history of criminal convictions or behavior under the enhancement factor – history of criminal convictions or behavior." In Jackson, the defendant was convicted of aggravated robbery and sentenced to the maximum term for a Range I offender convicted of a Class B felony. 60 S.W.3d at 739. One of the enhancement factors used by the trial court to enhance the defendant's sentence was that the defendant had a previous history of unwillingness to comply with the conditions of a sentence involving release in the community, Tennessee Code Annotated section 40-35-114(8). Id. at 739-40. On direct appeal, this court additionally determined that the defendant was adjudicated to have committed a delinquent act as a juvenile that would constitute a felony if committed by an adult, Tenn. Code Ann. section 40-35-114(20). Id. at 740. On review to our supreme court, the defendant argued that a juvenile criminal record could only be considered under factor (20) and that the trial court, therefore, improperly applied factor (8) to his juvenile probation violations. Id. In considering the issue, our supreme court explained as follows:

In 1995, the legislature amended Tennessee Code Annotated section 40-35-114 by adding enhancement factor (20), which allows for enhancement of a sentence if "[t]he defendant was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult." Tenn. Code Ann. § 40-35-114(20). Prior to this amendment, a defendant's juvenile record was considered a sufficient basis for sentence enhancement under section 40-35-114(1), which provides that "[t]he defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range."

After the 1995 amendment went into effect, several panels of the Court of Criminal Appeals recognized that if factor (1) was to continue being interpreted to allow consideration of juvenile records, such interpretation would render factor (20) without any significant effect. Consequently, various panels attempted to reconcile the two factors and have since held that these two factors apply to mutually exclusive instances of conduct: factor (1) applies only to adult criminal conduct, and factor (20) applies exclusively to juvenile adjudications. In addition, several panels have gone further to hold that factor (20) provides the exclusive means for allowing a court to consider any part of a juvenile record.

We agree that factors (1) and (20) are mutually exclusive. If not so construed, the broad interpretation given to factor (1) would render factor (20) "inoperative, superfluous, void, or insignificant." Because the legislature is not presumed to have passed or enacted useless legislation, factor (1) must necessarily apply only to adult criminal conduct, and factor (20) must apply exclusively to juvenile adjudications of delinquent acts.

Moreover, we also agree with the lower court that the plain language of factor (20) restricts a court's consideration of a defendant's "adjudicated delinquent acts" to only those delinquent acts that would constitute felonies if committed by an adult. However, the plain language of factor (20) is limited to those offenses that represent "delinquent acts," and a court may consider other offenses under separate enhancement factors.

Jackson, 60 S.W.3d at 741-42 (internal case citations omitted). Later, the court concluded that "we hold today that section 40-35-114(20) is not the exclusive means for using juvenile court records to enhance sentences in subsequent adult criminal proceedings." Id. at 743.

The Petitioner's presence report is not included in the record on appeal.[1] However, at the Petitioner's sentencing hearing, the State referred to the presence report and noted that the Petitioner

> had his first contact with the juvenile system at age eight and it just continued there, '04, '06, '06, [']06, '08, '09. His last juvenile offense being a theft over a thousand April 2009. The very next year, eighteen, possession of marijuana, 2010. Aggravated criminal trespass age eighteen, criminal trespass age eighteen, criminal trespass age eighteen, criminal trespass age eighteen, drug charge age nineteen, drug charge age nineteen, counterfeit controlled substance age nineteen, marijuana possession age nineteen, criminal trespass age nineteen, marijuana possession age nineteen.
>
> I mean one, two, three, four, five, six, seven, eight, nine, ten, eleven, twelve, thirteen contacts with the justice system as an adult before he picks this up.

Later in the sentencing hearing, the trial court recounted:

> But he also was in trouble as a juvenile. He's had extensive contact with the criminal justice system including before his mother died. Before his mother passed in June of 2000 he was . . . brought into contact with the juvenile system with criminal trespass and malicious mischief. He was warned and counseled. . . .
>
> His next contact with the juvenile system was 2004 misdemeanor assault was warned and counseled. . . . [H]e had contact in 2004 with misdemeanor assault, criminal trespass in 2006 was dismissed, 2006 aggravated burglary, evading arrest, was – Youth Service Bureau took control of him at that point and ten days later, November 24th, 2006, charged with theft of property less than 500, again, handled Youth Service Bureau. June 19th, 2008, he was declared dependent and neglected and then it says apparently turned over to a relative. . . . April 2009 charged with criminal trespass, warned and counseled and twenty-one days, three weeks later, charged with theft of property over the value of $1,000. Child was detained.
>
> So we don't know for what period of time but a year and [a] half later he was an adult and he was charged with possession of marijuana in

---

[1] It does not appear that the presence report was ever entered into evidence at the sentencing hearing.

the adult court, convicted and then we start with many contacts with the adult system eventually leading up to this violent, violent attack on three individuals resulting in Shabaka Reed being shot four times and transported in critical condition.

Thereafter, in discussing mitigating and enhancing factors, the trial court found that the Petitioner had a previous history of criminal convictions and criminal behavior.

On post-conviction, in ruling on the juvenile history issue, the post-conviction court found:

> [T]here were several other references to [the] Petitioner[']s criminal history during the sentencing hearing that were separate from the juvenile offenses. . . . These offenses would be sufficient to establish sentence enhancement. . . . Additionally, there were other enhancement factors that were triggered during the sentencing hearing. . . . For example, when the State was discussing [the] Petitioner's juvenile history, the State addresses the last offense that [the] Petitioner committed before becoming [an] adult. The offense was theft of property over $1,000. This is an offense that, if committed by an adult, would be a felony and thus could be relevant under sentence enhancement factor (16).
>
> Lastly, class A felony charges begin at the midpoint of the sentencing range before enhancement or mitigating factors are considered. The sentence for especially aggravated robbery carries fifteen to twenty-five years for [a] range one offender[; thus,] a sentence of twenty-one years at 100% is appropriate in light of the enhancing and mitigating factors discussed on the record.

We need not belabor whether the trial court properly considered the Petitioner's juvenile record and if so, under which enhancement factor(s), because, as noted by the post-conviction court, "there were several other references to [the] Petitioner[']s criminal history during the sentencing hearing that were separate from the juvenile offenses. . . . These offenses would be sufficient to establish sentence enhancement. . . ." The transcript of the sentencing hearing reflects the Petitioner's criminal behavior after becoming an adult, and the sentence imposed by the trial court does not "wholly" depart from the Sentencing Act. See State v. Bise, 380 S.W.3d 682, 706 (Tenn. 2012). Therefore, we cannot conclude that the Petitioner was prejudiced by any alleged deficiency in trial counsel's failure to challenge the use of his juvenile record or in appellate counsel's failure to raise the issue on appeal.

## Merger

The Petitioner next argues that trial counsel was ineffective for not raising as an issue in his motion for new trial that the trial court erred in failing to merge his convictions for especially aggravated robbery and attempted second-degree murder in violation of the principles of double jeopardy and due process.[2] He also argues that appellate counsel was ineffective for failing to raise the issue on appeal.

With regard to the merger issue, the post-conviction court noted that "[t]his is an issue that was settled in a similar case" by this court. The post-conviction court recounted that, in Theron Davis v. State, No. W2010-01607-CCA-R3-PC, 2011 WL 6323016, at *11 (Tenn. Crim. App. Dec. 16, 2011), perm. app. denied (Tenn. Apr. 19, 2012), this court decided that the offenses of attempted second-degree murder and especially aggravated robbery

> do not merge under the Blockburger test because "[u]nquesitonably, neither robbery nor the use of a deadly weapon is necessarily proven by proving the elements needed for first degree or second degree murder. Conversely an intentional or knowing killing of another is not necessarily proven by proving the elements of especially aggravated robbery." The offenses are not necessarily incidental of one another, and thus, under Blockburger, a defendant may be convicted of both without a violation of double jeopardy.
>
> For these reasons, neither [trial counsel]'s failure to object to this issue in his motion for new trial nor [appellate counsel]'s failure to raise the issue on appeal constitutes a failure to provide effective assistance of counsel.

The Petitioner does not dispute the post-conviction court's Blockburger analysis. He simply asserts that the case relied on by the post-conviction court, Theron Davis, 2011 WL 6323016, is distinguishable because, in his case, "the evidence of one felony necessarily proved the elements of the second felony." In support of his contention, the Petitioner relies on the Tennessee Supreme Court's determination in his co-defendant's discretionary appeal that "[b]ecause the [co-d]efendant's conduct demonstrated that he had not completed his intended theft at the time Mr. Reed suffered his serious bodily injury, we hold that Mr. Reed suffered his serious bodily injury during the commission of

---

[2] The Petitioner mentions due process only in his heading and conclusory sentence, and then his entire argument and legal authority focuses solely on double jeopardy. Therefore, we will constrain our analysis to double jeopardy.

the robbery with a deadly weapon." State v. Henderson, 531 S.W.3d 687, 698 (Tenn. 2017).

The prohibition against double jeopardy protects criminal defendants from "multiple punishments for the same offense." State v. Watkins, 362 S.W.3d 530, 541 (Tenn. 2012). "[A] single wrongful act may not furnish the basis for more than one criminal prosecution[,]" but "[i]f each offense charged requires proof of a fact not required in proving the other, the offenses are not multiplicitous." State v. Phillips, 924 S.W.2d 662, 665 (Tenn. 1996). In Tennessee, the test outlined in Blockburger v. United States, 284 U.S. 299, 304 (1932), is used to determine whether multiple convictions under different statutes violate the state constitutional double jeopardy prohibition against multiple punishment. Watkins, 362 S.W.3d at 556. The threshold inquiry in Blockburger is whether the convictions arise from the same act or transaction. Id. If this inquiry is answered in the negative, then double jeopardy is not implicated. Id. at 557. However, if the same act or transaction gives rise to multiple convictions, the court must determine whether the crimes constitute the same offense. Id. When the statutory definition of each offense includes an element not included in the other offense, then the offenses are distinct and double jeopardy is not implicated. Id.

In this case, the Petitioner's convictions for especially aggravated robbery and attempted second-degree murder certainly arose out of the same act or transaction. However, looking at the elements of the offenses, they each contain elements the other does not. Especially aggravated robbery is the knowing or intentional theft of property from the person of another, accomplished with a deadly weapon and resulting in serious bodily injury to the victim. See Tenn. Code Ann. § 39-13-401, -403. Second-degree murder is "[a] knowing killing of another[,]" id. § 39-13-210(a), and criminal attempt occurs when the defendant "[a]cts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense." Id. § 39-12-101(a)(3). In sum, especially aggravated robbery must involve a theft, be accomplished with a deadly weapon, and result in serious bodily injury to the victim; whereas, second-degree murder involves the intent to kill someone. Accordingly, the separate convictions for especially aggravated robbery and attempted second-degree murder do not violate principles of double jeopardy, and trial counsel's failure to seek merger or appellate counsel's failure to argue such as error on appeal does not constitute deficient performance.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the denial of the Petitioner's petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE